IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA L. BISHOP, | ) | CASE NO.  1:24-CV-00728-JZ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | JUDGE JACK ZOUHARY |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, Sandra Bishop ("Plaintiff" or "Bishop"), challenges the final decision of Defendant, Carolyn Colvin,[1] Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.    PROCEDURAL HISTORY

In July 2021, Bishop filed an application for POD, DIB, alleging a disability onset date of July 2, 2021 and claiming she was disabled due to traumatic left ankle arthritis, blurry vision, Fuchs endothelial dystrophy, type I macular telangiectasis, lumbar spinal stenosis, and Blount's disease of the left leg, post-

---

[1] On November 30, 2024, Carolyn Colvin became the Commissioner of Social Security.

surgery.  (Transcript ("Tr.") 55.)  The applications were denied initially and upon reconsideration, and Bishop requested a hearing before an administrative law judge ("ALJ").  (*Id*. at 55-71.)

On May 19, 2023, an ALJ held a hearing, during which Bishop, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id*. at 29-54.)  On June 12, 2023, the ALJ issued a written decision finding Bishop was not disabled.  (*Id*. at 15-24.)  The ALJ's decision became final on March 5, 2024, when the Appeals Council declined further review.  (*Id*. at 1-6.)

On April 22, 2024, Bishop filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 6, 8.) Bishop asserts the following assignment of error:

> (1) The ALJ erred in assessing Plaintiff's mild cognitive impairment, hyperlipidemia, gastroesophageal reflux disease, Fuch's corneal dystrophy of the eyes, type 1 macular telangiectasis of the right eye, pseudophakia of the eyes, and hypertension as non-severe.

(Doc. No. 6 at 1.)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Bishop was born in 1957 and was 65 years-old at the time of her administrative hearing (Tr. 55), making her a "person of advanced age," under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(e), 416.963(e).  She has a high school education.  (Tr. 151.)  She has past relevant work as an accounting clerk. (*Id*. at 151-52.)

### B.    Relevant Medical Evidence[2]

On August 20, 2020[3], Bishop attended an office visit to address Fuchs' endothelial dystrophy, conjunctival lesion, amblyopia of the left eye, pseudophakia of both eyes, and a history of LASIK. (*Id*. at

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

250.) The physician discussed corneal procedures in "great detail" and Bishop wished "to hold off on any corneal procedure at this time." (*Id*.) The progress note states a plan to continue to monitor the conjunctival lesion and consult to Dr. Sayegh for further evaluation. (*Id*.)

On September 16, 2020, Bishop presented for an eye exam due to complaints of blurred vision, difficulty reading and watching television, eye redness, and floaters. (*Id*. at 227.) Bishop was assessed with Fuchs' corneal dystrophy with functional vision in both eyes, conjunctival lesion on the left eye that was resolved that day, amblyopia of the left eye, stable pseudophakia of both eyes, and history of LASIK. (*Id*. at 231-2.) Bishop was advised to "continue muro drops" in both eyes and follow up in one year. (*Id*. at 232.)

On October 19, 2020, Bishop had an x-ray of her left ankle, revealing "unchanged remote fracture deformity of the left fibular midshaft. Moderate osteoarthrosis of the tibiotalar joint and midfoot." (*Id*. at 241.)

On October 26, 2020, Bishop had a bilateral renal ultrasound revealing a "mild increase in size of an overall small left renal cyst." (*Id*. at 239-40.)

On October 24, 2021, Bishop presented for a consultative examination. (*Id*. at 284.) The exam revealed full dexterity, normal gait, and full muscle strength. (*Id*. at 285.) Bishop's left ankle was noted to have plantar flexion, inversion, and eversion. (*Id*. at 282.) The exam noted Bishop had left eye surgery to correct a lazy eye. (*Id*. at 284.) her visual acuity in the left eye was 20/70 and 20/40 in the right eye, without correction. (*Id*. at 285.) The examining physician opined Bishop "should be able to walk four to five hours out of an eight-hour day . . . could probably be on her feet for a combined total of five hours out

---

[3] Bishop cites to "relevant clinical evidence" dated in 2020. (Doc. 6, at 4-5.) These records pre-date Bishop's alleged onset date and are thus of limited relevance. *Gore v. Comm'r of Soc. Sec..,* No. 5:20-CV-341, 2021 WL 3673196, at *4 (N.D. Ohio Aug. 19, 2021)(citing *Lorrison v. Berryhill*, No. 18-cv-10289, 2019 WL 1324247, at *6 (E.D. Mich. Mar. 25, 2019).

of an eight-hour day . . .probably could carry less than 30 pounds frequently and more than 40 pounds on occasion. There are no other limitations in function." (*Id*. at 285-86.) No visual limitation were noted. (*Id*.)

On October 25, 2021, Bishop was seen for low back pain. (Tr. 287.) Imaging of the spine showed "mild to moderate degenerative change of the lumbar spine." (*Id*.)

On December 13, 2021, Bishop presented for a psychological consultative examination with Thomas M. Evans. Ph.D. (Tr. 289.) Dr. Evans found Bishop "does not meet DSM-5 criteria for a psychiatric disorder." (*Id*. at 291.) Bishop denied feeling depressed since she was young and denied experiencing symptoms of anxiety, panic attacks, or phobias. (*Id*.) Bishop denied visual and auditory hallucinations and there was no evidence of psychosis. (*Id*.) Dr. Evans stated, "[t]here are no psychiatric symptoms that warrant clinical attention." (*Id*. at 292.)

On May 26, 2022, Bishop presented with right knee pain. (*Id*. at 301.) Imaging displayed "chronic posttraumatic and degenerative changes without acute osseous abnormality." (*Id*. at 302.) Physical therapy was ordered. (*Id*.)

On June 9, 2022, Bishop presented with memory loss and dizziness for 3 months. (*Id*. at 303.) An MRI with and without contrast was obtained. (*Id*.) The MRI results were: "1. Negative for acute infarct or acute intracranial process. No hydrocephalus or mass effect. 2. Minimal age-appropriate chronic microvascular ischemia in the supratentorial white matter. 3. No hydrocephalus. No cerebral atrophy for age." (*Id*. at 304.)

On November 16, 2022, Bishop was seen for concerns of memory problems. (*Id*. at 396.) She was assessed with "mild cognitive impairment rule out cognitive disfunction secondary to anxiety." (*Id*.)

On November 29, 2022, Bishop presented to her primary care provider due to an "episode of shaking, increased memory loss since 11/25/22. Had HA and dizziness only one day on 11/25/22. States when bending over this morning felt head pressure." (*Id*. at 305-06.) The plan was for Bishop "to see

neuro asap." (*Id*. at 306.) It was noted that Bishop had a handicap placard for 6 months because she could not stand or walk without an assistive device due to a femur/ankle fracture. (*Id*. at 307.)

On December 1, 2022, Bishop was seen for "mild cognitive impairment and anxiety." (*Id*. at 310.) She was referred for "neuropsych testing" and an EEG. (*Id*.) She was prescribed Lexapro and advised to stop taking both ibuprofen and Zoloft. (*Id*. at 311.)

On January 3, 2023, Bishop underwent an x-ray of her right knee. (*Id*..) The x-ray revealed "tricompartmental osteoarthritis, with most severe involvement in the medial tibiofemoral joint." (*Id*. at 332.) That same day, Bishop underwent an x-ray of her hip. (*Id*. at 333.) The x-ray revealed "[d]egenerative changes at the lumbosacral junction and in the left hip." (*Id*. at 334.)

On January 26, 2023, Bishop attended her sixth physical therapy session to treat arthropathy of the right hip and knee, bursitis of her right hip, and right knee and hip pain. (*Id*. at 461-63.) Bishop reported "feeling good today other than the right knee hurts a little, 2/10." (*Id*. at 462.) The physician reported Bishop's response to treatment was "decreased pain" and she "was able to complete today's treatment with some difficulty." (*Id*. at 461.)

On February 9, 2023, Bishop presented for a follow-up appointment for Fuch's dystrophy in both eyes. (*Id*. at 313.) The conjunctival cystic lesion of her left eye resolved. (*Id*. at 315.) She has surgical scarring nasally and temporally of the left eye. (*Id*.) Both eyes have vitreous floaters. (*Id*.) Bishop was advised to "continue muro drops both eyes", follow up in 1 year or sooner if needed, and "when ready, consider YAG cap left eye vs Descemet's membrane endothelial keratoplasty (DMEK) right eye?" (*Id*. at 316.)

On February 22, 2023, Bishop presented for a neuropsychological evaluation. (*Id*. at 325.) Her occupation is noted as "retired". (*Id*.) The summary of the evaluation notes that Bishop's longstanding general level of ability has likely been in the average range. (*Id*.) The "results revealed one isolated low

performance when encoding visual information that appeared impacted by anxiety, importantly her recognition was thought to be intact when accounting for low initial learning." (*Id*.) She displayed "moderate symptoms of depression and anxiety." (*Id*.) Dr. Tan notes, "[g]iven her intact cognitive profile, no cognitive diagnosis is warranted at this time. . . The etiology of her subjective cognitive concerns is likely attributed to clinically significant psychological distress given elevated symptoms of depression, anxiety, and psychological stress." (*Id*.)

On March 10, 2023, Bishop received a Supartz injection into her right knee to address knee pain. (*Id*. at 523.) Bishop rated her knee pain as a 2/10. (*Id*. at 524.)

On April 20, 2023, Bishop presented for an MRI of the spine. (*Id*. at 520.) The MRI results state "there is moderate levoconvexity and multilevel degenerative changes most pronounced at L4-L5 with moderate to severe spinal canal and moderate bilateral neural foraminal stenosis." (*Id*. at 521.) The degenerative changes were noted to "have increased since the prior exam 11/05/2012." (*Id*.)

## C. State Agency Reports

### 1. Mental Impairments

On March 17, 2022, Paul Tangeman, Ph.D., reviewed the file and opined "[t]here are no mental medically determinable impairments established." (*Id*. at 66.)

### 2. Physical Impairments

On November 25, 2021, Steve McKee, M.D., reviewed the file and opined Bishop was capable of performing non-detailed visual work tasks. (*Id*. at 60.) Dr. McKee advised Bishop should "[a]void exposure to unprotected heights, dangerous machinery, and commercial driving due to pain and vision problems." (*Id*. at 60-61.)

On March 21, 2022, on reconsideration, Mehr Siddiqui, M.D., affirmed Dr. McKee's findings. (*Id*. at 64-69.)

**D.    Hearing Testimony**

During the May 19, 2023 hearing, Bishop testified to the following:

• She had issues with her prior job. (*Id*. at 34.) She had problems with her memory. (*Id*.) She finds it challenging to remember things. (*Id*. at 45.) She tries to "do one thing at a time" and "write everything down that I need to do." (*Id*.) At her prior job, she could not sit for very long and had her legs propped up on a box underneath her desk because her legs swelled. (*Id*. at 34-35.) Her back was hurting. (*Id*. at 35.) She could not get used to the job and was afraid she was going to be fired if she didn't quit. (*Id*.) She was having trouble seeing, even with a large computer monitor. (*Id*.) She "couldn't pick up [her employer's] particular system . . ." (*Id*. at 36.)

• She has back pain that has gotten worse since 2012. (*Id*.) She has spinal stenosis in the upper spine. (*Id*.) Injections have helped with the pain but do not correct the problem. (*Id*.) She had a bone disease in her leg since she was a child. (*Id*.) She has some numbness in her left leg due to past surgeries. (*Id*.) She has "stabbing lumbar pain at times going into [her] back and down [her] legs." (*Id*.) It is worse on the left side. (*Id*. at 38.) The pain "can be up to an 8 or 9" out of 10. (*Id*.) The pain gets better when she sits with her feet up. (*Id*.)

• Her vision is blurry. (*Id*. at 36.) Her doctor advised that she may need a corneal transplant. (*Id*.) She used a large computer screen at work and pulled it closer to her. (*Id*. at 40.) She has a hard time reading print in any color besides black. (*Id*. at 44.)

• She has "a bad right knee" but she can walk and will probably have knee replacement surgery but has not scheduled it. (*Id*. at 37.) She does not use an assistive walking device. (*Id*.) She previously used a cane about 5 years ago after a surgery. (*Id*.) She has fallen in the past due to numbness in her left leg and ankle stiffness. (*Id*.) She has degenerative issues with both her right knee and right hip. (*Id*. at 42.) The hip pain started in her 40s. (*Id*. at 43.)

• After walking for about 15-20 minutes her back and ankles hurt and she has to sit down and put her feet up to relieve the pain. (*Id*. at 38-39.) She walks with a limp and hangs on the grocery cart to walk. (*Id*. at 44.) She can stand for about 10-15 minutes before the pain is too much and she needs to sit. (*Id*. at 39.) She can sit in an office chair for about 20-30 minutes before she needed to either get up or elevate her legs. (*Id*. at. 39.) Her office chair "had a lumbar thing" behind her back which helped a little. (*Id*.) She had a box about 12 inches tall under her desk to elevate her legs. (*Id*. at 40.) She needed something higher to alleviate the pain. (*Id*.)

• She estimates that she cannot lift more than 10 pounds. (*Id*. a 41.) Trying to lift anything heavier hurts her back. (*Id*. at 42.) She does not remember if a doctor told her not to lift more than 10 pounds or if that is a self-imposed restriction. (*Id*.)

• She used to seek treatment for depression and anxiety. (*Id*. at 45.) She took a prescription medication but didn't think it was working and quit taking it. (*Id*.) She thinks she should have continued taking it because it may have helped her depression and anxiety. (*Id*.)

• She is able to perform household chores, including light housekeeping, preparation of light meals, and laundry. (*Id*. at 47.)

The VE testified Bishop had past work as an accounting clerk.  (*Id*. at 49.)  The ALJ then posed the following hypothetical question:

> Let's assume a hypothetical individual with the claimant's age, education, and past job you've described. I'm going to go through a couple of hypotheticals. First hypothetical is light work as defined by the regulations. Push or pull with the upper extremities and foot control operation are limited as per exertional weight limits. Additionally, the foot control operation, the left, would be limited to never on foot control operations. Never climbing ladders, ropes, or scaffolds. Occasional for climbing ramps or stairs, stooping, kneeling, crouching, crawling. Limited to the frequent level for balancing. Far acuity with the left is limited to the occasional level, and that would be the left eye only. No use of dangerous machinery. No exposure to unprotected heights. No commercial driving. Can the hypothetical individual perform the past job?

(*Id*. at 49-50.)

The VE testified the hypothetical individual would be able to perform Bishop's past work as an accounting clerk.  (*Id*. at 50.)

The ALJ posed a second hypothetical, exactly the same as the first hypothetical, "except lift and/or carry 40 pounds occasionally, 25 pounds frequently. Stand and/or walk five hours out of eight hours – an eight-hour day. Can the hypothetical individual perform the past job? (*Id*.) The VE testified that the individual could perform the past job. (*Id*.) The ALJ asked whether the hypothetical individual could perform past work if limited to sedentary work. (*Id*.) The VE testified, yes, the individual could perform past work. (*Id*.) The ALJ asked if the hypothetical individual could perform past work is limited to simple routine tasks. (*Id*. at 51.) The VE responded, no. (*Id*.) The ALJ asked whether four 15-minute breaks in addition to regularly scheduled breaks would be work preclusive. (*Id*.) The VE responded, yes. (*Id*.) The

ALJ asked whether, instead of the 4 15-minute breaks, the person was off task 20% of the day, if that would be work preclusive. (*Id*.) The VE responded that it would be work preclusive. (*Id*.) The ALJ asked whether the individual could "be absent consistently two days a month" instead of the extra breaks. The VE responded that would be work preclusive. (*Id*.) The ALJ asked whether frequent supervision of the employee would render them work preclusive. (*Id*. at 52.) The VE testified that frequent supervision would be work preclusive. (*Id*.)

### III.   STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful

activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Bishop was insured on the alleged disability onset date, July 2, 2021, and remains insured through March 31, 2024, the date last insured ("DLI"). (Tr. 17.) Therefore, in order to be entitled to POD and DIB, Bishop must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.

2.  The claimant has not engaged in substantial gainful activity since July 2, 2021, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: right knee osteoarthritis; Blount's disease; spinal stenosis; post traumatic osteoarthritis left ankle; depression not otherwise specified (NOS); anxiety NOS; amblyopia left eye; peripheral artery disease, not otherwise specified (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift/carry 40 pounds occasionally and 25 pounds frequently. She can stand/walk 5 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant can push/pull with the upper extremities and foot control operations are limited as per exertional weight limits. Additionally, foot control operation with the left is limited to never. The claimant is also unable to climb ladders, ropes, or scaffolds, and can occasionally climb ramps or stairs. She can occasionally perform stooping, kneeling, crouching, and crawling, and can frequently balance. Her far acuity with the left is limited to occasional (right is unlimited). She cannot use dangerous machinery or have exposure to unprotected heights. The claimant cannot perform commercial driving as well.

6.     The claimant is capable of performing past relevant work as an accounting clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 2021, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 17-24.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility

determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the

Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

### A.  The ALJ's Analysis

In her assignment of error, Bishop argues the ALJ "erred in assessing Plaintiff's mild cognitive impairment, hyperlipidemia, gastroesophageal reflux disease, Fuch's corneal dystrophy of the eyes, type 1 macular telangiectasis of the right eye, pseudophakia of the eyes, and hypertension as non-severe."[4] (Doc. No. 6, at 1, 9.) Bishop states the ALJ erred by relying on Bishop's activities of daily living while assessing her mild cognitive impairment. (*Id*. at 9-11.) She asserts that "an individual's ability to perform activities of daily living . . . does not necessarily indicate that she possesses the ability to engage in substantial gainful activity." (*Id*. at 10.) Bishop asserts the ALJ "failed to offer sufficient analysis for finding Plaintiff's Fuch's corneal dystrophy of the eyes; type 1 macular telangiectasis of the right eye, and pseudophakia of the eyes do not meet the applicable *de minimis* standard set forth at step two." (*Id*. at 15.) Bishop claims "the ALJ's assessment of non-severity [as it relates to her eye conditions]. . . is based on a mischaracterization of the record." (*Id*. at 16.)

---

[4] Aside from Bishop's cursory statement alleging the ALJ erred by assessing the severity of certain conditions, Bishop's brief is devoid of analysis concerning hyperlipidemia, gastroesophageal reflux disease, and hypertension. (Doc. 6.) Any argument regarding the aforementioned conditions is waived. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 490 (6th Cir. 2006) (Plaintiff "made little effort to develop this argument in her brief on appeal . . . Under these circumstances we decline to formulate arguments on [Plaintiff's] behalf . . .[r]ather, we limit our consideration to the particular points that [Plaintiff] appears to raise in her brief on appeal."); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

Bishop claims the ALJ erred in assessing her mild cognitive impairment by relying on Bishop's December 2021 consultative psychological examination because it was "stale." (*Id*. at 9, 11.) Bishop argues the ALJ erred by failing to contemplate "the mild cognitive impairment that he erroneously assessed as non-severe" in the RFC. (*Id*. at 13.)

In response, the Commissioner states the ALJ "followed the legal standard set forth by the regulations and this Court" by concluding that Bishop had severe impairments and then proceeding through the sequential evaluation process to consider "what effect, if any, Bishop's impairments (both severe and non-severe) had on her ability to work." (Doc. 8 at 7.) The Commissioner asserts the ALJ acknowledged Bishop's mild cognitive impairment, Fuch's corneal dystrophy, type 1 macular telangiectasis of the right eye and pseudophakia of the eyes, did not find the conditions severe, and considered the impairments at the remaining steps of the sequential evaluation. (*Id*. at 8.) The Commissioner responds the ALJ cited to Bishop's ability to perform activities of daily living to demonstrate her level of activity, and not to insinuate that activities of daily living equate to full-time work. (*Id*. at 10.) The Commissioner points out the ALJ considered medical evidence related to Bishop's cognitive impairment, including records from 2021 and 2023, before concluding that the limitation was not severe. (*Id*. at 10-11.) Moreover, the Commissioner argues that a diagnosis alone does not require the ALJ to find an impairment severe. (*Id*. at 12.) The Commissioner asserts that finding "an impairment is 'severe' at Step Two does not mandate a finding that there are functional limitations stemming from that impairment." (*Id*. at 13, citing *Robinson v. Comm'r of Soc. Sec. Admin*., No. 5:21-cv-01921-DAC. 2022 WL 4132886, *11 (N.D. Ohio Aug. 6, 2020). In response to Bishop's argument that the ALJ's assessment of non-severity as it relates to her eye conditions is based on a "mischaracterization" of the record, the Commissioner responds that the Court cannot reweigh the evidence. (*Id*. at 13-14.) The Commissioner

further states that the "ALJ's determination was consistent with the prior administrative findings . . ." and the ALJ's analysis was supported by substantial evidence. (*Id*. at 14-15.)

"Before an ALJ can find that an individual is disabled, the ALJ must find that the individual has a 'severe' impairment." *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013); s*ee* 20 C.F.R. § 404.1520(a)(4)(ii). "If the individual has at least one severe impairment, the ALJ will then assess how much work the individual can still do." *Id*., *see* 20 C.F.R. § 404.1520(a)(4)(iv). When making that assessment, "the ALJ must consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are not severe." *Kirkland,* 528 F. App'x at 427, citing *Fisk v. Astrue,* 253 Fed.Appx. 580, 583 (6th Cir.2007) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1523; *Pompa v Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) ("Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps."); *see Draine v. Comm'r of Soc. Sec*., No. 1:22-cv-1370, 2024 WL 1014030, at *16 (N.D. Ohio March 8, 2024 (*citing Pompa*). If the ALJ considers all the individual's impairments, the "failure to find additional severe impairments . . . does not constitute reversible error." *Kirkland,* 528 F. App'x at 427, citing *Fisk,* 253 Fed.Appx. at 583 (brackets and internal quotation marks omitted); *see also Garris v. Comm'r of Soc. Sec*., No. 3:11-cv-2538, 2013 WL 3990754, at *7 (N.D. Ohio Aug. 2, 2013) ("Any failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error and 'legally irrelevant.'").

Here, at Step Two, the ALJ found Bishop had severe impairments. (Tr. 17.) The ALJ properly proceeded through the sequential process and considered both severe and non-severe impairments to determine how much work Bishop could still do. (Tr. 17-23.) The ALJ wrote, in part, at Step Two:

> The claimant was also diagnosed with the following: mild cognitive impairment, hyperlipidemia; gastroesophageal reflux disease (GERD); Fuchs corneal dystrophy eyes; type 1 macular telangiectasis right eye; pseudophakia eyes; and hypertension. (Exs. 14F, 18F, However, these

> conditions were conservatively treated and well managed with medications; and therefore, they are non-severe impairments. Nonetheless, the undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

(Tr. 17-18.) The ALJ found Bishop had severe impairments, recognized other non-severe impairments, and considered both when forming the RFC. (*Id*.) Even if the non-severe impairments could be considered severe, they were considered in the ALJ's opinion. While Bishop would classify her impairments differently, it is not the Court's job to do so on appeal. *Ealy*, 594 F.3d at 512 ("[The] Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."). It is the ALJ's job to weigh the evidence and resolve conflicts, and he did so here. While Bishop would weigh the evidence differently, it is not for the Court to do so on appeal. There is no error.

Bishop maintains the ALJ relied on her consultative psychological examination performed in 2021 to assess her mental impairments as non-severe, and equated her ability to perform activities of daily living with her ability to work. (Doc. No. 6, at 9, 11.) The ALJ assessed Bishop's mental impairment as follows:

> A neuropsychological evaluation in late February 2023 noted an anxious and depressed mood. (Exs. 14F, 15F). However, a consultative psychological examination noted that she had not felt depressed since she was young and denied experiencing symptoms of anxiety. (Ex. 8F). She was also independent with activities of daily living and was able to do household chores. (Ex. 15F). As a result, the claimant's mild cognitive impairment does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe.
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. The first functional area is understanding, remembering or applying information. In this area, the claimant has no limitation. The next functional area is interacting with

> others. In this area, the claimant has no limitation. The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has no limitation. The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation.

> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is non-severe (20 CFR 404.1520a(d)(1)).

(Tr. 18.) Here, the ALJ considered both the 2021 consultative examination and the 2023 neuropsychological examination. (*Id.*) Moreover, the ALJ considered Bishop's ability to perform activities of daily living as one factor in his analysis. *See Stark v. Comm'r of Soc. Sec.*, No. 5:17 CV 2187, 2019 WL 400606, at *10 (N.D. Ohio Jan. 31, 2019) ("Daily activities are a factor to be considered in assessing a claimant's subjective symptom reports. . . . The Appeals Council did not equate these activities alone with the ability to perform full-time work, but rather considered them as one factor in evaluating Plaintiff's subjective complaints.")(internal citations omitted.) The ALJ's consideration of the entire record, including the 2021 and 2023 reports, as well as activities of daily living is proper. There is no error.

Bishop argues the ALJ did not offer sufficient analysis for finding her eye conditions non-severe. (Doc. 6 at 15-16.) While the ALJ concluded the eye conditions were "conservatively treated and well managed with medications", and thus non-severe, he did include limitations in the RFC to account for Bishop's visual impairments. (Tr. 17-18, 20.) The RFC states:

> The claimant is also unable to climb ladders, ropes, or scaffolds, and can occasionally climb ramps or stairs. She can occasionally perform stooping, kneeling, crouching, and crawling, and can frequently balance. Her far acuity with the left is limited to occasional (right is unlimited). She cannot use dangerous machinery or have exposure to unprotected heights. The claimant cannot perform commercial driving as well.

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

***

> The claimant was treated for Fuchs' corneal dystrophy of both eyes in February 2023. There was amblyopia of the left eye, as well as type I macular telangiectasis of the right eye, and pseudophakia of both eyes. Bilateral posterior capsular opacification was noted, with a history of LASIK. Her distance vision was 20/30 on the right and 20/60 on the left. An exam was positive for 1+ posterior capsular opacification to the right eye, and 3+ posterior capsular opacification to the left eye. (Ex. 14F-1-5).

(Tr. 20-21.) The ALJ's determination is consistent with the prior administrative medical findings, concluding that Bishop had limited acuity on the left and needed to avoid exposure to unprotected heights, dangerous machinery, and commercial driving. (Tr. 23, 60-61, 68-69.) Here, the ALJ built a "logical bridge" between the evidence and the result. *Fleischer*, 774 F. Supp. 2d at 877. There is no error.

Bishop claims the RFC failed to contemplate her mental impairments. (Doc. 6 at 13-15.) The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996) ("The RFC

assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered*.  See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*).  However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability.  *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports").  *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

In the RFC analysis, the ALJ analyzed the evidence related to Bishop's mental impairments as follows:

> Dr. Evans, PhD., opined that the claimant had no psychiatric symptoms that warranted clinical attention, never took psychotropic medication or sought mental health treatment. Therefore, she had no mental limitations. (Ex. 8F). These opinions are persuasive, as they are consistent with the claimant's longitudinal mental health record. As previously noted, she was independent with activities of daily living and was able to do household chores. (Ex. 15F). Consequently, these opinions are persuasive, as the claimant's primary problems were physical and not mental health issues.
>
> A treating source statement at Exhibit 14F found that the claimant did not demonstrate significant cognitive difficulty. (Ex. 14F-14). This is persuasive because it is consistent with the overall record, which shows no limitations in this area or any psychological domains. It is also consistent with the opinions of Dr. Evans, who was able to personally examine the claimant and consider her subjective complaints. (Ex. 8F).

(Tr. 22.) Moreover, at Step Two, the ALJ determined Bishop had "no limitation" in the four broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders. (*Id*. at 18.) Substantial evidence supports the RFC findings. The ALJ considered Bishop's testimony as well as medical treatment records. (*Id*.) In doing so, the ALJ properly considering several factors concerning Bishop's mental impairments. There is no error.

While Bishop interprets the records differently, the findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772-73 (6th Cir. 2001).  In the Sixth Circuit an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## VII.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: February 6, 2025

       *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## <u>OBJECTIONS</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**